UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

MARK STAAKE,

    Plaintiff,

v.                                                                                                          Civ. No. 19-1193 RB/GJF

DAVID JABLONSKI, *et al.*,

    Defendants.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION
REGARDING DEFENDANT CENTURION'S MOTION FOR SUMMARY JUDGMENT**

    THIS MATTER[1] is before the Court on Defendant Centurion Correctional Healthcare of New Mexico's Motion for Summary Judgment on Plaintiff's claims of deliberate indifference and negligence related to the medical treatment he received at a New Mexico Corrections Department (NMCD) facility. ECF 40 (Motion).[2] Plaintiff responded and Defendant filed its Reply. ECF 45, 46. For the reasons set forth below, the Court recommends **GRANTING** the Motion in part, **DISMISSING** Plaintiff's federal claims for failure to exhaust administrative remedies, and **REMANDING** his state claims to state court.[3]

---

[1] Plaintiff filed a duplicative case in *Staake v. Jablonski*, Cv. No. 1:19-cv-00861-MV-KBM (2019), which has no bearing on this Court's determination because that action was dismissed without prejudice for failure to prosecute. Additionally, Plaintiff filed that duplicative action after he filed this case in state court.

[2] Although this case originally featured thirteen defendants, it has been narrowed down only to Plaintiff's claims against Defendant Centurion. *See* ECF 28, 29.

[3] The Court files this recommendation ("PFRD") pursuant to the presiding judge's Order of Reference Relating to Bankruptcy Appeals, Social Security Appeals, Prisoner Cases, and Immigration Habeas Corpus Proceedings. ECF 23.

1

## I. BACKGROUND[4]

All of Plaintiff's claims against Centurion relate to medical care he received from April 26, 2018, to November 24, 2019, when Centurion's contract to provide medical care to the NMCD ended. ECF 39-2; ECF 1-2 ¶ 3; ECF 45 at 3.

On May 2, 2019, Plaintiff filed his complaint in the First Judicial District Court in Santa Fe County. ECF 1. The complaint brought three claims for relief, which, liberally construed, alleged that Centurion was either a negligent or deliberately indifferent medical provider for failing to adequately manage his pain from a back injury he suffered while lifting weights as well as a long-term leg injury. ECF 2-1 at 101; ECF 45 at 10; ECF 39-4 at 16, 27-34; ECF 39 at 16-18.

NMCD had in place during Plaintiff's incarceration a grievance policy and accompanying procedures. The policy, CD-150500, defined exhaustion of administrative remedies to mean completion of the grievance process through the department-level appeal (appeal to the Corrections Secretary or her designee). ECF 39-5 at 2, ¶ C; *Id.* at 13, ¶ D(6). Medical or mental health complaints were subject to the grievance procedure. *Id.* at 5, ¶ E(1)(a), (b), (d).

To properly exhaust, an inmate was required to file an informal complaint within five working days of the incident. *Id.* at 9, ¶ A(1)(a). The inmate then had five days to submit an inmate grievance form after receiving NMCD's response to the informal complaint. *Id.* at 9, ¶ A(3). The inmate could file a grievance if he did not receive a response to the informal complaint within ten working days. *Id.* at 10, ¶ A(4).

---

[4] The operative facts set forth in this section come from the *Martinez* Report and the full record before this Court and are not "specifically controverted" by the non-moving party. *See* D.N.M.LR-Civ. 56.1.

As relevant to this case, Plaintiff submitted three informal complaints regarding medical care incidents during the time Centurion was providing medical care for NMCD.[5] ECF 45-4 at 4, 7-9, 11. He only filed one grievance related to these informal complaints. *See id*. at 6 (inmate grievance filed on 1/28/19, related to his 11/30/18 complaint that NMDC had responded to on 1/4/19). This grievance thus was 19 days late and was denied for failure to follow policy. *Id*. Importantly, Plaintiff failed to pursue *any* of these complaints related to Centurion medical care through a department-level appeal. ECF 45-5 at 1-11.

Plaintiff submitted another informal complaint on December 28, 2019, related to NMCD failing to provide him adequate medical care on December 24, 2019. This was approximately one month after Centurion ceased providing medical services to NMCD and seven months after Plaintiff filed his Amended Complaint in this case. ECF 39-6 at 2-7; ECF 39 at 29-30. Even the background of this informal complaint begins only on September 11, 2019, which is four months after Plaintiff filed the operative Complaint. ECF 39-6 at 2. Plaintiff appealed this grievance to the NMCD Director of Adult Prisons who responded that Plaintiff was being adequately treated for his back and leg pain by medical staff and that he must use his theraband only while in the medical unit due to security concerns associated with having it in the housing units. ECF 45-1 at 9.

Plaintiff initiated four other grievance processes regarding medical concerns even longer past the date he filed his lawsuit and the date on which Centurion stopped providing care. *See* ECF

---

[5] The first informal complaint, filed 11/30/18, alleged the prison failed to give Plaintiff a muscle relaxant, Baclofen, after he requested it multiple times. The prison responded that he was not prescribed the medication. The second informal complaint filed on 12/18/18, again alleged failure to provide Baclofen as well as a theraband. The prison responded that it had previously answered this complaint. The third complaint, filed on 1/7/19, alleged the same failure to provide Plaintiff treatment (on 1/7/19), as well as failure to give shots for his back on an unspecified date the week prior. The prison responded that a medical provider needed to determine if the shots were necessary and, if so, a scheduler would set up the appointment.
     Plaintiff also submitted one informal complaint during this time that did not relate to medical care and was also not fully exhausted. *See* ECF 45-4 at 2-3. Additionally, he submitted two health service request forms that were not part of the grievance exhaustion process. *See id*. at 5, 10.

39-6 at 9-25; ECF 45-4 at 14-28 (complaints or grievances filed on 1/7/20, 8/12/20, 9/25/20, 10/2/20, and 10/9/20). Plaintiff appealed only one of these additional complaints or grievances through the department level. *See* ECF 45-2; ECF 39-6 at 9-25; ECF 45-4 at 14-28. This appeal related to an incident in October 2020, long after Centurion was no longer providing care and after Plaintiff had filed his operative Complaint. ECF 45-2 at 2.

## II. LEGAL STANDARDS

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material when it "might affect the outcome of the suit under the governing [substantive] law," and a dispute is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Libertarian Party of N.M. v. Herrera*, 506 F.3d 1303, 1309 (10th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If the movant meets this initial burden, the burden then shifts to the nonmovant to set forth specific facts from which a rational trier of fact could find for the nonmovant." *Id.* (quotations omitted). In other words, "the party opposing summary judgment must 'designate *specific* facts showing that there is a genuine issue for trial.'" *Janny v. Gamez*, 8 F.4th 883, 899 (10th Cir. 2021) (emphasis in original) (quoting *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)); *see also id.* (observing that "the nonmovant must ensure that the factual dispute is portrayed with particularity" (quotation omitted)). "To accomplish this, the facts must be

identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Libertarian Party*, 506 F.3d at 1309. Furthermore, such "affidavits or declarations used to oppose summary judgment [must] 'set out facts that would be admissible in evidence.'" *Janny*, 8 F.4th at 900 (quoting Fed. R. Civ. P. 56(c)). Consistent with these principles, all "material facts set forth in the [summary judgment motion] will be deemed undisputed unless *specifically controverted*." D.N.M.LR-Civ. 56.1(b) (emphasis added).

"A 'judge's function' in evaluating a motion for summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Salazar-Limon v. City of Houston*, 137 S. Ct. 1277, 1280 (2017) (quoting *Liberty Lobby*, 477 U.S. at 249); *see also First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968) (the question at summary judgment is whether a jury should "resolve the parties' differing versions of the truth at trial"). In evaluating such a motion, the Court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the … motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

### B. Exhaustion of Administrative Remedies

In pertinent part, the Prison Litigation Reform Act (PLRA) provides: "No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. § 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA "requires prisoners to exhaust prison grievance procedures before filing suit." *Jones v. Bock*, 549 U.S. 199, 202 (2007) (citing 42 U.S.C § 1997e(a)).

The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). However, the exhaustion requirement does not apply to former prisoners who file suit after their release. *Norton v. City of Marietta*, 432 F.3d 1145, 1150-51 (10th Cir. 2005). Plaintiff's status at the time he files suit is determinative of whether § 1997e(a)'s exhaustion provision applies to the claims. *Id.* at 1150. Exhaustion is mandatory and the Court is without discretion to dispense with administrative exhaustion where the PLRA requires it. *Booth v. Churner*, 532 U.S. 731, 739 (2001).

> Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory. All available remedies must now be exhausted; those remedies need not meet federal standards, nor must they be plain, speedy, and effective. Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit. And unlike the previous provision, which encompassed only § 1983 suits, exhaustion is now required for all action[s] ... brought with respect to prison conditions, whether under § 1983 or any other Federal law.
>
> [The exhaustion provision was enacted by Congress] to reduce the quantity and improve the quality of prisoner suits.... Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

*Porter*, 534 U.S. at 524-25.

A prisoner does not satisfy the PLRA's exhaustion requirements by merely filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006). "[E]xhaustion requirements are designed to . . . give the agency a fair and full opportunity to adjudicate their claims." *Id.* at 90. To properly exhaust administrative

remedies under the PLRA, a prisoner must use all steps that the agency provides so that the agency addresses the issues on the merits. *Id.*. The exhaustion requirement gives prisoners

> an effective incentive to make full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors. This is particularly important in relation to state corrections systems because it is difficult to imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of its prisons.

*Id.* at 94 (internal quotation marks omitted).

The PLRA requires a prisoner seeking money damages through a lawsuit brought under federal law to "complete a prison administrative process that could provide some sort of relief on the complaint stated, but no money" before filing suit. *Booth*, 532 U.S. at 734. "[E]ven where the 'available' remedies would appear to be futile at providing the kind of remedy sought, the prisoner must exhaust the administration remedies available." *Patel v. Fleming*, 415 F.3d 1105, 1109 (10th Cir. 2005) (citing *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002)). Only when the prisoner has completely exhausted the prison's administrative process has the inmate satisfied the exhaustion requirement for his prison conditions claim. *See Ross v. Cnty. of Bernalillo*, 365 F.3d 1181, 1187 (10th Cir. 2004) (holding that inmate had failed to grieve from alleged denials of medical treatment occurring after the date of first grievance, so those claims were not exhausted), *overruled on other grounds in part, Jones*, 549 U.S. at 199.

The United States Supreme Court's rulings are unequivocal: "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones*, 549 U.S. at 211 (citing *Porter*, 534 U.S. at 524). Indeed, "[e]xhaustion is no longer left to the discretion of the district court, but is mandatory." *Woodford*, 548 U.S. at 84. Exhaustion is a precondition to filing a suit, and "an action brought before administrative remedies are exhausted

must be dismissed without regard to concern for judicial efficiency." *Ruppert v. Aragon*, 448 F. App'x 862, 863 (10th Cir. 2012).

The mandatory language means a court may not excuse a failure to exhaust, even to take special or exceptional circumstances into account. *See Miller v. French*, 530 U.S. 327, 337 (2000) (explaining that "[t]he mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion"). Judge-made exhaustion doctrines do remain amenable to judge-made exceptions. *See McKart v. United States*, 395 U.S. 185, 193 (1969) ("The doctrine of exhaustion of administrative remedies ... is, like most judicial doctrines, subject to numerous exceptions"). However, a statutory exhaustion provision, like the PLRA's statutory requirement, stands on different footing. With statutory provisions, Congress establishes the rules—and courts have a role in creating exceptions only if Congress intended for them to do so. Therefore, mandatory exhaustion statutes like the PLRA create mandatory requirements and foreclose judicial discretion. *See, e.g., McNeil v. United States*, 508 U.S. 106, 111 (1993) ("We are not free to rewrite the statutory text" when Congress has strictly "bar[red] claimants from bringing suit in federal court until they have exhausted their administrative remedies"). The Courts must take such statutes at face value and refuse to add unwritten limits onto the textual requirements. *See*, *e.g., id.*; *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 12-14 (2000); *see also* 2 R. Pierce, Administrative Law Treatise § 15.3, p. 1241 (5th ed. 2010) (collecting cases). "Courts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement." *Ross v. Blake*, 578 U.S. 632, 648 (2016).

## III. ANALYSIS

### A. Plaintiff's Statement of Material Facts

Before delving into its legal analysis, the Court will address Plaintiff's assertions of material facts related to exhaustion, to which Defendant objected. ECF 45 at 10-12; ECF 46 at 5-7. First, the Court notes that Plaintiff failed to support many of his factual assertions with citations to the record as required by Federal Rule of Civil Procedure 56(c) and Local Rule 56.1(b). *See also Libertarian Party*, 506 F.3d at 1309 ("facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein.").

Instead, Plaintiff seems to have attempted to convert his statement of material facts into an declaration by stating in the second line "[u]nder the penalty of perjury Plaintiff swears the following facts are true and correct [t]o the best of his [k]nowledge." ECF 45 at 3. Plaintiff did not separately sign his "Statements of Material Facts" but did sign his Response as a whole, some ten pages later. ECF 45 at 21. This signature, however, is required by Federal Rule of Civil Procedure 11 for a different reason: to affirm that Plaintiff's entire Response was submitted for a proper purpose and with adequate legal and factual support.

The Court considers Plaintiff's assertions of fact to be improper for two independent and alternative reasons: (1) they fail to cite admissible evidence in the record, in violation of Rule 56(c), and (2) they fail to comply with the proper declaration format under 28 U.S.C. § 1746, which states an unsworn declaration must be "in substantially the following form: 'I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature).'" *See also* D.N.M. LR-Civ 56.1(b) (stating every party's material facts must refer with particularity to those portions of the record upon which they rely); *Bradenburg v. Beanman*,

632 F.2d 120, 122 (10th Cir. 1980) (stating *pro se* litigants must follow rules of civil procedure and simple, nonburdensome local rules).

The Court has graver concerns still regarding Plaintiff's factual assertions related to exhaustion. These assertions are in paragraphs 33 through 41 of his statement of material facts. ECF 45 at 10-12. Apart from the facts directly supported by his grievance exhibits, the remainder of these paragraphs consist of legal arguments or conclusions that lack the requisite specificity or foundation to be helpful to the Court and are not admissible as lay opinion under Federal Rule of Evidence 701. *See, e.g.,* ECF 45 at 10, ¶ 34 ("Defense Council [sic] believes [NMCD] follows its own policies however they do not. [T]he grievance officer is supposed to be an impartial person not a lieutenant . . . that is a conflict of interest . . . ."); *Hall v. Bellmon,* 935 F.2d 1106, 1111 (10th Cir. 1991) (A "nonmovant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient."). The Court will address these legal arguments later in the analysis.

The Court will address only two of Plaintiff's purported material facts because they come the closest to *bona fide* factual assertions: first, Plaintiff states that he "has completed at least 12 different grievances complete with Department Level Appeal." ECF 45 at 11, ¶ 40. This is Plaintiff's opinion for which he lacks proper foundation. In addition, he does not cite to specific facts in the record to support this assertion. For the Court to consider this fact to be in genuine dispute, it would need to know the specifics behind these grievance processes, including the forms Plaintiff used, how they were filled out, to whom he submitted them, when he submitted them, when the officers responded, and how he followed up. For these facts to be material to this case, the Court would also have to know the date of the incident in question and whether it related to

medical care. For all these reasons, the Court cannot rely on Plaintiff's bald conclusion that he completed 12 grievance processes.

Second, Plaintiff states a "grievance did not follow him" when he was transferred to the prison in Clayton, New Mexico on August 31, 2018, and he was unable to complete the grievance process "at no fault of" his own. ECF 45 at 12, ¶ 41. Without any explanation as to why (a) Plaintiff was not at fault for failing to complete this process, or (b) more information on this grievance, including what it said and when and how it was filed, the Court is unable to glean any material admissible information from Plaintiff's lay opinion on this matter.

For all of these reasons, the only admissible evidence Plaintiff has submitted that is material to the exhaustion of his claims is found in his exhibits, which the Court carefully analyzed and summarized in the background section.

### B. Exhaustion

Defendant argues that Plaintiff has failed to exhaust his administrative remedies under the PLRA and thus his claims must be dismissed. ECF 40 at 14-16. The Court liberally construes Plaintiff's Response as making four counter-arguments: first, because prison officials administer the grievance process, there is a conflict of interest that relieves Plaintiff of all exhaustion responsibilities; second, because NMCD did not timely reply to all of Plaintiff's grievances, he is relieved of all exhaustion responsibilities; third, Defendant provided an incomplete record, so none of its exhaustion arguments are valid and Plaintiff's evidence demonstrates proper exhaustion; and fourth, even if he failed to exhaust his claims against Centurion, Defendant cannot "pass the buck" to another party. ECF 45 at 10-12, 14-15.[6]

---

[6] Defendant also argues that Plaintiff failed to demonstrate deliberate indifference or negligence. ECF 40 at 16-27. Because the Court finds that Plaintiff failed to exhaust his federal claims and the Court recommends that the presiding judge decline to exercise jurisdiction over the remaining state claims, the Court does not reach these arguments.

The PLRA states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This rule effectively precludes prisoners from filing suit under federal law until administrative remedies are exhausted. *See Ross*, 365 F.3d at 1184 (holding that failure to exhaust remedies regarding one claim does not warrant dismissal of entire action). Plaintiff was incarcerated at the time he filed suit and, thus was required to properly exhaust his administrative remedies. *See* ECF 1-2; *Norton v. City of Marietta, Okla.*, 432 F.3d 1145, 1150 (10th Cir. 2005). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Ngo*, 548 U.S. at 90–91.

All of the evidence before the Court demonstrates that Plaintiff only pursued two administrative complaints through a department-level appeal. *See* ECF 45-1 at 9; ECF 45-2 at 20. As to the earlier of the two, Plaintiff submitted an administrative complaint on December 28, 2019, which alleged that NMCD failed to provide him adequate medical care on December 24, 2019. That date is almost a full month *after* Centurion was no longer providing medical services to NMCD and seven months after Plaintiff filed his Amended Complaint. *See* ECF 39-6 at 2-7; ECF 39 at 29-30. As a result, this complaint and appeal cannot provide the basis for Plaintiff's federal claims against *Centurion* in this suit. *See Jones*, 549 U.S. at 202 (stating the PLRA "requires prisoners to exhaust prison grievance procedures *before* filing suit.") (emphasis added); ECF 39-5. at 9, ¶ A(1)(a) (An inmate must file an inmate informal complaint form within five working days from the date of incident); *Ngo*, 548 U.S. at 90–91 ("Proper exhaustion demands compliance with an agency's deadlines . . . .").

None of Plaintiff's complaints related to medical care while Centurion was providing services to NMCD were appealed to the department level. ECF 45-5 at 1-11. Additionally, only one of these complaints was followed up with a grievance, and that grievance was 19 days late and denied for failure to follow policy. ECF 45-4 at 6. NMCD policy defines exhaustion of administrative remedies to mean completion of the grievance process through the department-level appeal (appeal to the Corrections Secretary or her designee). ECF 39-5 at 2, ¶ C; *Id.* at 13, ¶ D(6). Further, the inmate must submit an inmate grievance form within five working days after receiving NMCD's response to the informal complaint. *Id.* at 9, ¶ A(3). For all of these reasons, none of these complaints can support the claims Plaintiff has brought against Centurion. *See Ngo*, 548 U.S. at 81, 83-84 (a "procedurally defective administrative grievance" "does no[t] satisfy the PLRA's exhaustion requirements").

Plaintiff fails to refute Defendant's exhaustion arguments or evidence. Plaintiff provides no legal support for any of his arguments, and the Court is unaware of any legal authority supporting his four positions. First, prison officials by necessity participate in the prison grievance process. *See, e.g., Ngo*, 548 U.S. at 86 (discussing prison appeal system that ended with the Director of the California Department of Corrections). Second, Plaintiff failed to produce evidence that any of his complaints were not answered. *See, e.g.,* ECF 45-4 at 4, 7, 9, 11, 13, 16, 15 (Plaintiff's complaints or grievances with NMCD responses). Further, if NMCD didn't answer any of his agency complaints, he had a right—and responsibility under the PLRA—to continue exhausting his administrative remedies by filing a grievance within ten working days after sending in his complaint. ECF 39-5 at 10, ¶ A(4).

Third, Plaintiff has not pointed to specific facts that refute Defendant's evidence that he failed to exhaust. None of the evidence before the Court demonstrates that Plaintiff properly

13

exhausted his federal claims. At most, Plaintiff has produced evidence creating a factual dispute about whether a few grievance documents were missing in the original *Martinez* report; however, that dispute is not material because it still fails to show that missing documents would demonstrate that Plaintiff properly exhausted his federal claims. It also fails to show that NMCD's recordkeeping cannot be relied on to carry Defendant's exhaustion burden, distinguishing this case from *Roberts v. Barreras*. 484 F.3d 1236, 1238 (10th Cir. 2007). *Roberts* concluded that NMCD failed to carry its exhaustion burden when the plaintiff produced evidence that he had exhausted his claims and the Department of Justice was investigating the prison for failing to document and file inmate grievances. *Id*. Finally, Plaintiff has failed to offer any legal authority that Centurion should be held responsible for a later medical provider's action.

The Court has considered Plaintiff's exhibits in addition to the *Martinez* Report and construed all admissible facts in the record before it in Plaintiff's favor. *See Hall*, 935 F.2d at 1111 (stating *Martinez* report is treated like an affidavit when a plaintiff submits contrary evidence). The complete record before the Court demonstrates that Plaintiff failed to exhaust his federal claims. As a result, his federal claims are barred under the PLRA and should be dismissed without prejudice for failure to exhaust.

### C.  Remand of State Law Claims

Plaintiff originally filed his Complaint in the First Judicial District Court of the State of New Mexico. ECF 2-1 at 1-4. In addition to his federal claims, he alleged state law claims of negligence and negligent hiring or supervision. *Id.* at 11. Defendants later removed this case to this Court. ECF 1.

Under the supplemental jurisdiction granted by 28 U.S.C. § 1367, a federal court has subject-matter jurisdiction over certain state law claims. A district court's decision whether to

exercise supplemental jurisdiction after dismissing all claims over which it has original jurisdiction is discretionary. *See* § 1367(c). District courts may decline to exercise supplemental jurisdiction over a claim if they have dismissed all claims over which they have original jurisdiction. *Osborn v. Haley*, 549 U.S. 225, 245 (2007); *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006).

The U.S. Supreme Court has stated that needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. *United Mine Workers of Am.. v. Gibbs*, 383 U.S. 715, 726 (1966). When all federal claims have been dismissed, a district court may, and usually should, decline to exercise jurisdiction over any remaining state claims. *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011); *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998); *Young v. City of Albuquerque*, 77 F. Supp. 3d 1154, 1185 (D.N.M. 2014).

This Court thus recommends dismissing all federal claims in this case, declining to exercise supplemental jurisdiction over Plaintiff's remaining state law claims, and remanding this proceeding to state court for adjudication of those claims.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that Defendant is entitled to summary judgment on Plaintiff's federal claims and the Court should not exercise jurisdiction over the remaining state law claims.

**IT IS THEREFORE RECOMMENDED** that the presiding judge **GRANT** Defendant's Motion for Summary Judgment [ECF 40] in part and dismiss Plaintiff's federal claims without prejudice for failure to exhaust administrative remedies.

**IT IS FURTHER RECOMMENDED** that the presiding judge **REMAND** Plaintiff's remaining state law claims to the First Judicial District Court of the State of New Mexico.

SO RECOMMENDED.

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(c). Any request for an extension must be filed in writing no later than seven days from the date of this filing. **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed**.